UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

                                                  **Chapter 11**

        The Bridge to Life, Inc.,

                                                  **Case No.  05-19154-JF**

             Debtor.
------------------------------------------------------------X


## DECISION AND ORDER DENYING MOTION FOR RECONSIDERATION OF CASE DISMISSAL OR, IN THE ALTERNATIVE, A STAY PENDING APPEAL

### JEROME FELLER
### UNITED STATES BANKRUPTCY JUDGE

Appearances:

**Arthur Lawrence Washburn, Jr., Esq.**
**New York Attorney**
**5209 Route 30**
**Dorset, Vermont 05251-3525**
**Attorney for The Bridge to Life, Inc.**

By: Arthur Lawrence Washburn, Jr., Esq.

**Horowitz & Faeth, LLP**
**38-50 Bell Boulevard**
**Bayside, New York 11361**
**Attorneys for William Lucadamo**

By: George J. Faeth, Esq.

**United States Trustee**
**33 Whitehall Street, 22 Floor**
**New York, New York 10004**

By: Linda A. Riffkin, Esq.

1

The Bridge To Life, Inc. ("Bridge") filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on May 11, 2004, Case No. 04-16989-jf ("First Chapter 11 Case"). The First Chapter 11 Case was dismissed with prejudice to refiling on November 30, 2004. Notwithstanding the bar to refiling, Bridge filed another petition for reorganization under Chapter 11 of the Bankruptcy Code on June 7, 2005, Case No. 05-19154-jf ("Refiled Chapter 11 Case"). On June 10, 2005, the Court, *sua sponte*, dismissed the Refiled Chapter 11 Case.

Before the Court is a Motion filed by Bridge on June 20, 2005, styled as a request for "reinstatement" of the Refiled Chapter 11 Case or, in the alternative, a stay pending appeal (the "Motion"). The fancy of a motion for reinstatement is foreign to the Federal Rules of Bankruptcy Procedure. However, since the relief requested by Bridge is sought pursuant to Fed. R. Civ. P. 59(e), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9023, we will deem the Motion as a motion for reconsideration under Fed. R. Civ. P. 59(e). *See In re Crozier*, 60 B.R. 683, 687 (Bankr. S.D.N.Y. 1986).

In essence, Bridge contends that its Chapter 11 refiling was permissible because the reason for the dismissal of the First Chapter 11 Case no longer existed. For the reasons hereinafter more fully set forth, the Motion is denied because the Refiled Chapter 11 Case was i) filed in disobedience of a prior Order of this Court; and ii) a misuse of Chapter 11, just like the First Chapter 11 Case.

I.

Background and context is necessary to comprehend the Court's *sua sponte* dismissal of Bridge's second Chapter 11 filing in thirteen months. Bridge is a rather interesting study

2

of an enterprise driven by a moral mission, but riddled by internecine disputes that have impeded realization of its objective. These disputes have resulted in bitter, protracted, and expensive state court litigation over the last three years and two misguided Chapter 11 filings.

Bridge is a corporation organized in 1992 under the New York Not-For-Profit Corporation Law as a crisis pregnancy center, with its principal place of business in the County of Queens, State of New York. Eleanor L. Ruder ("Ruder") is its founder, serves as its executive director, manages its affairs and apparently is its driving force. It is a non-sectarian charity whose core purpose is to provide assistance and support to expectant women to encourage and enable them to choose life, and not abortion. To advance that purpose, Bridge established a counseling center, a clothing distribution and baby furnishings program and, subsequently, a residence home to sustain expectant women ("Residence Home"). The mission is funded entirely from public and charitable grants. Income is from voluntary donations, foundation grants and fund raising events. Bridge is a qualified tax exempt organization under section 501(c)(3) of the Internal Revenue Code and is registered with the Charities Bureau of the New York State Attorney General's Office.

On January 15, 2002, Bridge opened the Residence Home at leased premises located at 124-15 14th Avenue, College Point, New York. It was this expansion to include the Residence Home which led to internal feuding and ultimately the Chapter 11 filings. Ruder and her supporters opposed the Residence Home as a financial drain adversely impacting upon the overall mission of the organization. On the other hand, William Lucadamo ("Lucadamo") and his supporters fought on behalf of the Residence Home and its employees.

3

Lucadamo, a major benefactor of Bridge, formerly served as a member of Bridge's board of directors and as its treasurer. He also guaranteed the mortgage on Bridge's most valuable asset, a parcel of real property located at 75-01 Utopia Parkway, Fresh Meadows, New York ("Fresh Meadows Property").

A board of director's election dispute erupted in the spring and summer of 2002. On June 6, 2002, a meeting of Bridge's board of directors was held. Part of the agenda was the election of board members, which under the by-laws of Bridge is by a majority of the existing board. The majority of candidates were elected as a group at that meeting, but a separate vote was held as to Lucadamo's re-election to the board. The vote was tied 4-4. Lucadamo exercised a proxy on behalf of an absent board member in his own favor and took the position that he was properly re-elected at that time. Another meeting of Bridge's board of directors was held on July 23, 2002. One of the items on the agenda at that meeting was a review of the proxy voting at the June 6, 2002 meeting. Lucadamo's re-election to the board on June 6, 2002 was declared invalid and a new vote was held. Lucadamo, maintaining that he was already re-elected to the board on June 6, 2002, declined to run for office again and his name was not submitted for re-election to the board of directors. His vacancy was filled.

On August 15, 2002, Lucadamo commenced a lawsuit in the Supreme Court of the State of New York, County of Queens. *William Lucadamo v. The Bridge To Life, Inc.*, Index No. 21750/02 (Honorable Janice A. Taylor, J.S.C.) ("Lucadamo State Court Action"). The Complaint consisted of three causes of action: 1) a demand that Bridge be directed to repay $57,304.34 from its general accounts to its Residence Home's accounts, 2) an injunction prohibiting Bridge from closing the Residence Home, and 3) judicial confirmation that

4

Lucadamo was properly re-elected to the board of directors on June 6,2002.

On October 1, 2002, after lengthy negotiations, Lucadamo and Bridge entered into a stipulation which was so-ordered by Justice Taylor ("So-Ordered Stipulation"). Among other things, the So-Ordered Stipulation provided that i) the Lucadamo State Court Action would be referred to a referee to hear and to make a recommendation to Justice Taylor, ii) the Residence Home would remain open, and iii) the Residence Home Employees would be paid. Apart from some testimony before Referee David H. Rosen in November 2002, little substantive progress was made in the Lucadamo State Court Action. Instead, over the next eighteen months, until the filing of the First Chapter 11 case, the parties locked swords in ancillary state court litigation. The disputes centered around payment of Resident Home employees' salaries, continuing maintenance of the Residence Home, and Bridge's compliance with the So-Ordered Stipulation and other orders of Justice Taylor. Bridge and its attorney, Arthur L. Washburn, Jr., Esq.,[1] were sanctioned for contempt by Justice Taylor and when the First Chapter 11 Case was filed, a motion by Lucadamo to hold Ruder in contempt was pending. A total of ten appeals were taken by Bridge between March 2003 and April 2004 to the Appellate Division of the New York State Supreme Court, Second Department ("Appellate Division, Second Department"), from orders entered by Justice Taylor.

In May 2003, Bridge ceased making salary payments to the Residence Home employees in violation of the So-Ordered Stipulation. Bridge then challenged the validity of

---

[1] Washburn has served as *pro bono* counsel to Bridge in all matters, both in state court and bankruptcy court, since September 26, 2002.

5

the So-Ordered Stipulation. Justice Taylor rejected the challenge[2] and held Bridge in contempt in October 2003. Bridge was given 30 days to purge its contempt by paying the employees. When Bridge refused to purge its contempt, Justice Taylor, in December 2003, awarded Lucadamo a judgment in the sum of $41,830.00 for his legal fees ("Lucadamo Sanctions Judgment"). Meanwhile, in the face of Bridge's refusal to pay wages to the Residence Home employees, George J. Faeth, Esq.,[3] counsel for Lucadamo, commenced a separate action on their behalf in state court ("Employees' State Court Action").

The Lucadamo Sanctions Judgment was appealed to the Appellate Division, Second Department, but Bridge was unable to qualify for an appeal bond. Execution of the Lucadamo Sanctions Judgment was served upon Bridge by a New York City Sheriff on May 7, 2004. The judgment could be satisfied only through the sale of the Fresh Meadows Property. On May 11, 2004, Ruder filed the First Chapter 11 Case on behalf of Bridge to forestall enforcement of the Lucadamo Sanctions Judgment and to obtain a more hospitable forum to resolve its disputes with Lucadamo.

The battleground now switched to the bankruptcy court. Bridge removed the third cause of action in the Lucadamo State Court Action to the bankruptcy court, and made clear its intention to challenge the Lucadamo Sanctions Judgment and the Residence Home employees' salary claims in the bankruptcy forum. Not surprisingly, Lucadamo moved to dismiss Bridge's First Chapter 11 Case. At its core, Lucadamo's dismissal motion was predicated on contentions that i) Ruder lacked the authority to file a Chapter 11 petition on

---

[2] The So-Ordered Stipulation was also upheld on appeal by the Appellate Division, Second Department.
[3] Faeth has served as counsel to Lucadamo and the Residence Home employees in all matters, both in state court and bankruptcy court, since at least August 15, 2002.

6

behalf of Bridge, and ii) the Chapter 11 filing was little more than a litigation tactic in a two-party dispute and as such was filed in bad faith.

A hearing was held on Lucadamo's dismissal motion on November 4, 2004. Bridge consented to dismissal of its First Chapter Chapter 11 Case with prejudice to refiling at that hearing. An order to that effect was entered on November 30, 2004 ("First Dismissal Order").

Subsequent to dismissal of the First Chapter 11 Case, the Lucadamo State Court Action was decided. Referee Rosen filed a report dated April 22, 2005, recommending dismissal of the Lucadamo State Court Action. The report indicated that the third cause of action should be dismissed because Lucadamo was not entitled to use a proxy at the meeting of the Board of Directors held June 6, 2002; and that the first and second causes of action should be dismissed for lack of standing and for failure of proof. Justice Taylor confirmed the referee's report by order dated May 31, 2005, dismissing the complaint in the Lucadamo State Court Action.

A sheriff's sale was scheduled for June 8, 2005, to enforce the Lucadamo Sanctions Judgment. On June 7, 2005, Bridge filed a skeletal Chapter 11 petition, thereby commencing another Chapter 11 case. Once again, the Bridge filed to forestall enforcement of the Lucadamo Sanctions Judgment and for other strategic reasons. On June 10, 2005, the Refiled Chapter 11 Case was dismissed, *sua sponte*, as being filed in "blatant violation" of the First Dismissal Order prohibiting such refiling ("Second Dismissal Order").

II.

The First Dismissal Order incorporated within its terms an injunction prohibiting the

7

filing of another Chapter 11 case by Bridge. Bridge violated the injunction and the flouting of such injunction, *per se*, constituted "cause" for dismissal of the Refiled Chapter 11 Case under 11 U.S.C. §1112(b).

Bridge contends that the refiling of its Chapter 11 case on June 7, 2005, was permissible because by that time the Lucadamo State Court Action had been dismissed and, according to Bridge, once that lawsuit was dismissed the bar to refiling terminated. Plainly, Bridge is mistaken in its narrow reading of the First Dismissal Order. The First Chapter 11 Case was dismissed with a bar to refiling for reasons far broader than the existence of the Lucadamo State Court Action, i.e., to uphold the systemic integrity of the Bankruptcy Code. An interdiction against refiling was considered necessary and appropriate by this Court because the First Chapter 11 Case was commenced not to reorganize, restructure or rehabilitate, but to impermissibly use Chapter 11 as a weapon in a two-party dispute. And, it appeared likely to this Court that Bridge might again resort to improper use of Chapter 11. The long simmering, deep, and fundamental disputes between Bridge and Lucadamo did not subside with the dismissal of the Lucadamo State Court Action, and thus the bar to refiling continued unabated to prevent further misuse of Chapter 11.

Moreover, even assuming colorable validity to Bridge's contention that the injunction contained in the First Dismissal Order expired upon dismissal of the Lucadamo State Court Action, the Second Dismissal Order was more than warranted. Bridge's unilateral interpretation of the First Dismissal Order bordered on temerity. In the first instance, it is this Court that is in the best position to interpret its own orders and not Bridge. *See Casse v. Key Bank Nat. Assoc. (In re Casse)*, 198 F.3d 327, 333 (2nd Cir. 1999). It was incumbent

8

upon Bridge to obtain the Court's interpretation of the First Dismissal Order in advance of a Chapter 11 refiling. Apologies and/or assertions of inadvertence as an excuse for failure to do so are unacceptable. All persons bound by a stay or injunction order have a duty to comply until such time as the order is modified or reversed by orderly and proper proceedings. *See Walker v. City of Birmingham,* 388 U.S. 307, 320 (1967); *United States v. United Mine Workers of Am.* 330 U.S. 258, 293-94, (1947). As stated nearly a century ago by the Supreme Court:

> If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery.

*Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911).

III.

The proposition that a debtor's lack of good faith in filing and maintaining a Chapter 11 case constitutes cause to dismiss the petition is well established. *See e.g., In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3rd Cir. 1999); *C-TC 9th Avenue Partnership v. Norton Co. (In re C-TC 9th Avenue Partnership)*, 113 F.3d 1304, 1310 (2nd Cir. 1997); *Trident Assoc. Ltd. Partnership v. Metropolitan Life Ins. Co. (In re Trident Assoc. Ltd. Partnership)*, 52 F. 3d 127, 130-31 (6th Cir. 1995); *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994); *Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture)*, 936 F. 2d 814, 816-17 (5th Cir. 1991); *First Nat'l Bank of Sioux City v. Kerr (In re Kerr)*, 908 F. 2d 400, 404 (8th Cir. 1990); *Phoenix Picadilly, Ltd. v. Life Ins. Co. of Virginia (In re Phoenix Picadilly, Ltd.)*, 849 F.2d 1393, 1394 (11th Cir. 1988). The adoption of the good faith

32)

Chapter 11 requirement in bankruptcy jurisprudence is hardly surprising. As this Court observed: "The good faith requirement provides parties in interest and the bankruptcy courts with an important and useful tool for preserving the reorganization process for those Chapter 11 cases for which it was actually intended." *In re HBA East, Inc.* 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988).

There can be no question that Bridge's First Chapter 11 case was not driven by a legitimate reorganization purpose, but for strategic reasons to obtain a perceived litigation advantage in a two-party dispute. The Lucadamo Sanctions Judgment was on the eve of enforcement and Bridge was unable to post a bond for a stay pending appeal. In addition, Bridge was otherwise losing badly on numerous fronts in the state court litigation with Lucadamo. As Ruder frankly stated, "Bridge has been horribly mauled for two years" in the state court litigation.[4] Bridge initiated the First Chapter 11 case to stay enforcement of the Lucadamo Sanctions Judgment without posting a bond and to litigate its state law, non-bankruptcy disputes with Lucadamo in the bankruptcy forum.

A Chapter 11 filing may not be used as a litigation tactic to avoid the posting of a supersedeas bond. *See e.g., In re A.Z. Services, Inc.,* 208 B.R. 578, 580-81 (Bankr. S.D. Fla. 1997); *In re Edwards,* 140 B.R. 515, 519 (Bankr. W.D. Mo. 1992); *In re Smith,* 58 B.R. 448, 451 (Bankr. W.D. Ky. 1986); *In re Karum Group, Inc.,* 66 B.R. 436, 438 (Bankr. W.D. Wash. 1986); *In re Wally Findlay Galleries (New York), Inc.,* 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984). Nor may a Chapter 11 filing be employed to obtain an upper hand or leverage in litigation with another party or to provide an alternate forum for such litigation.

---

[4] Ruder's Decl. Opp'n Mot. Dismiss ¶ 41, Docket #43 in Case # 04-16989-JF.

As this Court emphasized:

> Chapter 11 petitions filed for the purpose of frustrating the legitimate processes of a non-bankruptcy forum constitute use of the reorganization vehicle inconsistent with the congressional intent. Chapter 11 relief should not be available to entities filing to obtain a perceived advantage in litigation with others or to provide an alternative judicial forum....
>
> ....
>
> An important factor to consider in determining whether a Chapter 11 case was initiated in good faith is whether the reorganization effort essentially involves a two-party dispute which can be resolved in a non-bankruptcy forum. These Chapter 11 cases do not represent efforts pitched to a "business's reorganization" or to "restructure a business's finances". They are essentially a two-party civil lawsuit involving non-bankruptcy law brought in the bankruptcy court in the guise of being a reorganization of some sort under Chapter 11. Chapter 11 was never intended to be used as a fist in a two party bout. The Chapter is entitled reorganization and not litigation.

*HBA East,* 87 B.R. at 260 (citations omitted).

Subsequent to dismissal of the First Chapter 11 case, the Residence Home was separated into a new entity operating at the same location under a new name by a local parish. Furthermore, Bridge took steps to sell its most valuable asset the Fresh Meadows Property. Bridge signed an exclusive listing agreement and a "For Sale" sign was posted on the property. And, Bridge took steps to obtain, upon notice to the New York Attorney General, the necessary approval of the sale by the state court, as required by section 510(a)(3) of the New York Not-For-Profit Corporation Law.

When Bridge refiled its Chapter 11 case on June 7, 2005, there were no creditors pressing for payment other than Lucadamo. A sheriff's sale was scheduled for the following

11

day in enforcement of the Lucadamo Sanctions Judgment.[5] Also, the separate Employees'
State Court Action was being accelerated by way of a motion for summary judgment.[6] As
before its filing of the First Chapter 11 Case, Bridge is unrelenting in its opposition to the
Lucadamo Sanctions Judgment and the Residence Home employees' claims, and
impermissibly filed a second Chapter 11 case in an effort to obtain an alternative forum to
challenge them.

In sum, Bridge has no legally cognizable need for Chapter 11. Bridge has the ability
to pay the amount of the Lucadamo Sanctions Judgment and the wage claims of the
Residence Home employees from its equity in the Fresh Meadows Property. Indeed, Bridge
has entered into a contract to sell the Fresh Meadows Property for $550,000, a sum which is
about $250,000 in excess of the mortgage. And, any disputes related to these claims or other
Lucadamo related disputes can and should be resolved in the state courts.

IV.

In the alternative, the Motion requests a stay pending appeal of the Second Dismissal
Order.[7] Apart from the caption of the Motion, Bridge makes no further reference to a stay
pending appeal in its papers. Nor did Bridge offer a word about a stay pending appeal at oral
argument on the Motion.

Bridge has failed to demonstrate that there is a likelihood that it will be successful on

---

[5] It was not until June 22, 2005, that Bridge finally posted a surety bond pending its appeal of the Lucadamo
Sanctions Judgment.

[6] Subsequent to the Second Dismissal Order, the state court (Honorable Janice A. Taylor, J.S.C.) granted the
summary judgment motion of the Residence Home employees and found that they were entitled to a judgment
of $118,104.18, plus statutory interest from October 1, 2002.

[7] Under Fed. R. Bankr. P. 8002(b)(2), the ten day period to appeal the Second Dismissal Order runs from the
entry of the order disposing of the Motion.

12

the merits of an appeal or that it will suffer irreparable harm if the stay is not granted. Moreover, granting a stay pending appeal would countenance a misuse of the bankruptcy process, and thus is not in the public interest.

V.

For all of the foregoing reasons, the motion for reconsideration of the order dated June 10, 2005, dismissing Bridge's Refiled Chapter 11 Case or, in the alternative, a stay pending appeal is denied.

IT IS SO ORDERED.

Dated: Brooklyn, New York
       September 3?, 2005

s/ JEROME FELLER

Jerome Feller
United States Bankruptcy Judge

13